Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 50221 | **DATE** | 3/19/2002 |
| **CASE TITLE** | FISHER vs. CHESTNUT MOUNTAIN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied. This case is hereby dismissed in its entirety with prejudice.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| ✗ Notices mailed by judge's staff. | MAR 19 2002 date docketed |
| Notified counsel by telephone. | |
| Docketing to mail notices. | docketing deputy initials |
| ✗ Mail AO 450 form. | 3-19-02 date mailed notice |
| ✓ Copy to judge/magistrate judge. | |
| /LC courtroom deputy's initials | Date/time received in central Clerk's Office — mailing deputy initials |

Document Number: 66

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

JEAN FISHER, JOSEPH FISHER, )
JANET FISHER, SUSAN YELLEN )
JAMES OTIS, MARGARET OTIS )
ADLAI STEVENSON, III, and )
NANCY STEVENSON )
)
Plaintiffs, )
)
v. ) No. 98 C 50221
)
CHESTNUT MOUNTAIN RESORT, )
INC. and CHESTNUT MOUNTAIN )
SKI CORPORATION, )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiffs, Jean Fisher, Joseph Fisher, Janet Fisher, Susan Yellen, James Otis, Margaret Otis, Adlai Stevenson, III, and Nancy Stevenson filed this action against defendants, Chestnut Mountain Resort, Inc. and Chestnut Mountain Ski Corporation alleging a violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq. The action is brought under the citizen suit provisions of the CWA. Id. § 1365(a)(1). Jurisdiction and venue are conferred by 33 U.S.C. §§ 1365(a), (c)(1). A two-count amended complaint was filed February 18, 1999. Count II, concerning storm water discharge, was voluntarily dismissed by plaintiffs on August 24, 2001. The remaining count asserts defendants are unlawfully discharging pollutants without a permit

in violation of 33 U.S.C. § 1311. Both defendants and plaintiffs have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II. BACKGROUND

Defendants own and operate a ski facility known as Chestnut Mountain Resort near Galena, Illinois. (Pl. LR 56.1(a) ¶ 11) Plaintiffs own real estate and reside adjacent to, or in proximity to, defendants' ski resort. (Id. ¶ 5) Prior to 1997, defendants' ski slopes faced away from plaintiffs' property and were separated from it by a ridge. (Id. ¶ 13) In 1997, defendants constructed and put into use a terrain park, designed mostly for use by snow-boarders, on the "Far Side" slope of its property. (Id. ¶ 16) The Far Side directly faces plaintiffs' property. (Id. ¶ 14) A creek, known as Watercress Creek, lies in the valley below the Far Side. (Id. ¶ 5) Watercress Creek, a tributary of the Mississippi River, runs through some of the plaintiffs' property. (Id. ¶ 7, Def. LR 56.1(a) ¶ 15)

Defendants use snow-making machines to provide artificial snow to the Far Side and water from the Mississippi River is used in this snow-making process. (Pl. LR 56.1(a) ¶ 17) The 1996 United States Geological Survey study entitled, "Contaminants in the Mississippi River, 1987-92," details pollutants found in the Mississippi River. (Pl. LR 56.1(b) ¶¶ 34, 35) According to the study, these pollutants include copper, chromium, zinc, lead, and

2

phosphorus. (Id. ¶ 35) Plaintiffs' expert witness, C. Michael Perkins, opined that pollutants contained in the Mississippi River water used in the artificial snow-making operations reach Watercress Creek as the artificial snow melts. (Id. ¶ 31)

During the construction of the Far Side, the slope was denuded of vegetation, and there are now gullies and rivulets that carry water down into plaintiffs' property. (Id. ¶ 5) There has been extensive erosion. (Id. ¶ 6) The land is saturated and constantly wet. (Id. ¶¶ 8-9) Debris is washed from the Far Side into the valley. (Id. ¶ 12) Water has percolated through the area, there is less wildlife, and the vegetation has changed. (Id. ¶¶ 13-15) The grass is course and marshy and compacted into one direction. (Id. ¶¶ 16-17) The creek now carries more water (id. ¶ 19), is fed by new channels (Id. ¶ 20), and moves in different locations. (Id. ¶ 22) Rock and debris are present in the creek. (Id. ¶ 26) The creek has been observed to be turbid and covered with green slime, foam, and suds. (Id. ¶ 27) Witnesses have seen bubbles being generated in the water. (Id. ¶ 28) Drainage tubes in the creek have become filled with silt and small trees and have had to be dug out and cleaned. (Id. ¶ 29)

The CWA requires citizen-plaintiffs to provide notice of the "alleged violation" to the "alleged violator" prior to bringing suit. 33 U.S.C. § 1365(b)(1)(A). Plaintiffs did so via letter

3

dated February 6, 1998. (Am. Comp. Exh. 1) The letter states defendants are "violating effluent limitations under the Clean Water Act" by discharging, without a permit, pollutants that "originate in the Mississippi River." (Id.) The discharge is said to be "in connection with [defendants'] snow making operation." (Id.) The letter lists the pollutants being discharged as "including, but not limited to one or more of the following: copper, chromium (hexavalent), nickel, zinc, lead, ammonia, dissolved oxygen, and phosphorus." (Id.)

Plaintiffs have filed a concurrent action in the Circuit Court of the Fifteenth Judicial Circuit, Jo Daviess County, Illinois, alleging in part, trespass and nuisance based upon defendants' snow-making activities on the Far Side. (Def. LR 56.1(a) ¶ 66)

### III. ANALYSIS

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See Hall v. Bodine Elec. Co., 276 F.3d 345, 352 (7th Cir. 2002). All facts are construed, and all reasonable inferences drawn, in favor of the nonmoving party. Hall, 276 F.3d at 352.

The CWA bars the discharge of any pollutant except as the

act otherwise provides. 33 U.S.C. § 1311(a). It provides that a permit may be obtained under certain circumstances allowing the discharge of pollutants as provided in the permit. Id. § 1342. For purposes relevant here, discharges pursuant to a permit are the only allowable discharges of a pollutant. "Pollutant" is defined by the CWA to include, among other things, "chemical wastes, biological materials, . . . rock, sand, cellar dirt and industrial, municipal and agricultural waste discharged into water." Id. § 1362(6). The phrase "discharge of a pollutant" includes "any addition of any pollutant to navigable waters from any point source . . . ." Id. § 1362(12). "Navigable waters," under the CWA, means "the waters of the United States . . . ." Id. § 1362(7). Thus, the CWA defines "navigable waters" to include waters (like Watercress Creek apparently) which are not navigable-in-fact.[1] A point source means "any discernible

---

[1] The U.S. Constitution grants Congress the power to regulate commerce among the states. U.S. Const. art. I, § 8, cl. 3 ("Commerce Clause"). This power extends to the regulation of the country's navigable waters. See Wisconsin v. E. P. A., 266 F.3d 741, 747 (7th Cir. 2001). Congress enacted the CWA as an exercise of its traditional jurisdiction "over waters that were or had been navigable in fact, or which could reasonably be made so." Solid Waste Agency of N. Cook County v. United States Army Corps of Eng'rs, 531 U.S. 159, 172 (2001). The Commerce Clause allows Congress to regulate the non-navigable tributaries of navigable waters because the water they discharge into the navigable waters into which they flow affects interstate commerce. See Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 525-26 (1941). Following this reasoning, the CWA, as it applies to non-navigable tributaries of navigable waters, has been held to be a valid exercise of Congress' power under the Commerce Clause. See United States v. Ashland Oil & Transp. Co.,

confined and discrete conveyance . . . from which pollutants are or may be discharged." Id. § 1362(14). As discussed above, before suit can be brought under the citizen suit provision, notice of the alleged violation must be given to the alleged violator. Id. § 1365(b)(1)(A).

As a threshold matter, defendants' motion for summary judgment argues plaintiffs lack standing under the Constitution to bring this Clean Water Act case. The Constitution limits federal judicial power to actual cases or controversies. U.S. Const. art. III, § 2; see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000). The doctrine of standing is an essential element of the article III case or controversy requirement. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To establish standing under article III, plaintiffs must show (1) they have suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable court decision. Laidlaw, 528 U.S. at 180-81. At the summary judgment stage, plaintiffs must set forth specific facts by affidavit or otherwise, which will be taken as true, establishing they meet the Constitution's standing

---

504 F.2d 1317, 1327 (6th Cir. 1974).

requirements. See Lujan, 504 U.S. at 560-61.

Plaintiffs allege defendants are discharging pollutants, without a permit, into Watercress Creek in violation of 33 U.S.C. §§ 1311(a), 1342. Plaintiffs must present sufficient evidence they have suffered an injury in fact which is traceable to defendants' alleged unlawful action and is redressable by the court in order to have article III standing. The evidence, viewed most favorably to plaintiffs, shows injury from increased snow melt runoff traceable to the addition of artificial snow to the Far Side slope. However, it does not show injury traceable to the alleged violation of discharging pollutants without a permit.

It is the discharge into Watercress Creek of the pollutants contained in the Mississippi River water that is the "alleged violation" of the CWA set forth in plaintiffs' required notice under 33 U.S.C. § 1365(b)(1)(A). It is from this discharge of pollutants into Watercress Creek that plaintiffs must be able to trace their injury in fact in order to have article III standing.[2]

---

[2] Plaintiffs in their briefs argue that a product called SnoMax used by defendants is a pollutant being discharged (Pl. Resp., p. 25; Pl. Reply, pp. 5-6) and at least imply that snow, water, rocks, and debris are pollutants being discharged. (Pl. Resp., pp. 26-27) However, the notice of intent to sue, which plaintiffs sent defendants, can fairly be read only to give notice that the alleged violation is the discharge, in the snow-making process, of pollutants originating in the Mississippi River. (Am. Comp. Exh. 1) Plaintiffs' action is limited to this

7

Plaintiffs' LR 56.1(b) statement of additional facts, many of which are set out above, includes many facts supporting injury attributable to erosion and excess water runoff. (Pl. LR 56.1(b) ¶¶ 5-29) However, plaintiffs do not point to anything in the record that shows the pollutants defendants are allegedly discharging have anything to do with these injuries. Most of the injuries advanced are to the plaintiffs' land and relate to increased water runoff. (Id. ¶¶ 5-13, 15-17, 23-24) Those relating to the creek are also mostly concerned with increased runoff, water volume, and erosion. (Id. ¶¶ 18-22, 25-26, 29) Plaintiffs do assert that the creek is "turbid, and covered with green slime, foam and suds" (id. ¶ 27), and that witnesses have observed bubbles being generated in the water. (Id. ¶ 28) They do not present evidence that the pollutants being discharged are or may be the cause of these events. See Public Interest Research Group v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 72-73 (3rd Cir. 1990), cert. denied, 498 U.S. 1109 (1991) (observing "if a plaintiff has alleged . . . that the waterway is unable to support aquatic life for example, but failed to show that defendant's effluent contains pollutants that harm aquatic life, then plaintiffs [sic] would lack standing").

---

alleged violation since the notice was not sufficiently specific to inform defendants that Snowmax, rocks, debris, or the snow or water itself were alleged pollutants being unlawfully discharged. See Atlantic States Legal Found. v. Stroh Die Casting Co., 116 F.3d 814, 818-19 (7th Cir.), cert. denied, 522 U.S. 981 (1997).

8

Plaintiffs have not pointed to anything in the record showing they have a concrete and particularized injury from the pollutants being discharged. Unlike the plaintiffs in Laidlaw, plaintiffs have not presented evidence that the discharge of pollutants directly affected their recreational, aesthetic, or economic interests. Laidlaw, 528 U.S. at 184. In Laidlaw, several individuals presented evidence that they ceased using the body of water at issue because of fear about the pollutants being discharged into it. Id. at 181-82. Another attested she believed the discharge of pollutants accounted for some of the reason her home had a lower value than others located farther from the defendant's facility. Id. at 182-83.

In Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149 (4th Cir. 2000), cited by plaintiffs, the party on whom standing rested testified the pollution or threat of pollution caused him to limit the amount of time his family swam in the waters and the amount of fish they ate. Id. at 153. He alleged the actual or threatened pollution diminished the value of his property. Id.

Here, plaintiffs do not present any such evidence. Plaintiffs have not in their statements of facts, which have been taken as true for purposes of defendants' summary judgment motion, or in their briefs, pointed to anything in the record that shows the discharge of pollutants limited their use of

9

Watercress Creek, or injured their recreational, aesthetic, or economic interests. Their pending state court action may be the place to seek redress for the damage they claim from erosion, excess runoff, and increased water volume.

Because plaintiffs have not presented evidence showing any injury in fact to them which is traceable to the alleged discharge of pollutants by defendants, they lack standing to prosecute this action. Because plaintiffs' lack of article III standing is dispositive, the court does not reach the other issues raised by defendants and plaintiffs in their cross-motions for summary judgment. Defendants' motion for summary judgment must be granted. Plaintiffs' motion for summary judgment must be denied.

### IV. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. Plaintiffs' motion for summary judgment is denied. This case is hereby dismissed in its entirety with prejudice.

**E N T E R:**

_____
PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 19, 2002

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

Jean Fisher, et al.  **JUDGMENT IN A CIVIL CASE**

v.  Case Number: 98 C 50221

Chestnut Mountain Resort, Inc., et al.

- ☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

- ■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied. This case is hereby dismissed in its entirety with prejudice.

All orders in this case are now final and appealable.

FILED-WD
02 MAR 19 PM 3:02
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 3/19/2002

Susan M. Wessman, Deputy Clerk